Minute Order Form (06/97)

JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7341 | **DATE** | 2/23/2004 |
| **CASE TITLE** | Carol Cooper vs. John E. Potter, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion for Summary Judgment is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 2 4 2004 | |
| | Notified counsel by telephone. | date docketed | 14 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL COOPER,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN E. POTTER, Postmaster General, UNITED STATES POSTAL SERVICE,<br><br>        Defendant. | FILED<br>FEB 2 3 2004<br>JUDGE HARRY D. LEINENWEBER<br>U.S. DISTRICT COURT JUDGE<br><br>Case No. 02 C 7341<br><br>Hon. Harry D. Leinenweber<br><br>DOCKETED<br>FEB 2 4 2004 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carol Cooper ("Cooper") filed a one-count complaint against Defendant United States Postal Service ("Postal Service") alleging racial and gender discrimination based on her dismissal as a probationary letter carrier. Cooper's claim arises under Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000 et seq. Before the Court is the Postal Service's Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Postal Service's Motion for Summary Judgment is granted.

### I.   BACKGROUND

Cooper, an African-American woman, was hired as a probationary part-time letter carrier on October 24, 1998. Cooper was placed on a 90-day, probationary period, due to expire on January 20, 1999. Prior to her probationary assignment, Cooper completed a two-week program that included training in sorting and delivering mail.

14

Following training, Cooper was assigned to the Park Ridge Post Office ("Park Ridge"), from which she delivered mail on Route 49. Her supervisor at Park Ridge was Thomas Hill ("Hill"), a white male. On January 15, 1999, Cooper was terminated from her probationary position.

The Postal Service contends that it terminated Cooper because of significant performance deficiencies evident throughout her probationary period. The Postal Service evaluates the work performance of probationary carriers on several factors, including the time taken to deliver mail, accuracy of mail collections, attendance, and safety. The Postal Service notes that Cooper delivered mail to the wrong address, picked up mail from a collection box not assigned to her route, failed to scan properly two collection boxes, and arrived late for work several times. The Postal service also notes that it advised Cooper of her poor performance throughout the probationary period. Specifically, on November 24, 1998, Hill gave Cooper a 30-day evaluation that provided an overall rating of "Does Not Fully Meet Expectations at this Time." Hill also completed a 30-day, probationary evaluation report that gave Cooper unsatisfactory ratings in three of six categories. In addition, on November 28, 1998, another supervisor reported several problems with Cooper's performance, including dropped mail, failure to follow instructions, and difficulty locating homes. On December 23, 1998, Hill completed the 60-day

evaluation report with an overall rating of "Does Not Fully Meet Expectations at this Time."

The Postal Service claims that Cooper's fatal flaws centered on her failure to scan properly certain collection boxes on January 5, 9 and 14, 1999. In addition, Cooper also picked up mail from the wrong collection box on January 5, 1999. The Postal Service outfits mail carriers with wand-like devices used to scan each assigned collection box on a given route. The battery-operated wand records the location of the collection box and the time of scanning. When the carrier returns to the post office, information is downloaded from the wand and a daily report is generated to ensure that all mail collection boxes are accounted for. If a collection box has not been scanned, someone must promptly return to the collection box to ensure that the mail gets collected. The Postal Service states that errors involving collection boxes are particularly glaring because Price Waterhouse conducts ongoing audits monitoring the timely delivery of mail from these boxes. Finally, the Postal Service notes that it received customer complaints about Cooper's services during her probationary period.

Cooper does not deny that the above incidents occurred. Nor does she contend that the Postal Service's performance standards are objectively unreasonable. Instead, Cooper claims that her difficulties were typical of other probationary carriers, and thus

her performance "was no more detrimental to the USPS than the other probationary" carriers. In addition, Cooper claims that the Postal Service failed to provide her with adequate training to allow her to succeed during the probationary period. In essence, Cooper argues that the Postal Service singled her out for discriminatory reasons, while retaining other similarly deficient employees outside of her protected class. Moreover, Cooper contends that Hill effectively sabotaged her ability to succeed by, among other things, refusing to provide additional training or required instructions, unfairly accusing Cooper of misdeeds, and failing to provide required equipment. As proof of Hill's discriminatory animus, Cooper claims that Hill changed a "satisfactory" rating on her 60-day evaluation to "unacceptable" after she was terminated. (The Postal Service admits that Hill "added new information" to Cooper's 60-day evaluation by adding a designation of "unacceptable" to a category previously marked as satisfactory.)

## II. LEGAL STANDARDS

### A. *Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the

governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the employment discrimination context, summary judgment against a plaintiff is warranted where "the evidence, interpreted favorably to the plaintiff, could [not] persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989).

## B. *Title VII*

Title VII makes it unlawful for an employer to terminate or otherwise to discriminate against an employee based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A plaintiff may prove unlawful employment discrimination through either direct evidence or via the indirect burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Cooper proceeds under the indirect method and therefore must first establish a *prima facie* case of discrimination by demonstrating that she (1) was a member of a protected class, (2) performed her job according to Defendant's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees outside of her protected class. *See, e.g., Markel v. Bd. of Regents of the Univ. of Wisc. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001). If Cooper can show that "there is some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion," *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir. 1997), a presumption of discrimination arises, and the Postal Service must produce evidence of a legitimate, nondiscriminatory reason for her termination. *Gordon*, 246 F.3d at 886.

## III. **DISCUSSION**

The Postal Service initially argues that Cooper cannot establish a *prima facie* case under Title VII because the undisputed facts show that she did not perform her job according to the Postal Service's legitimate expectations. To establish a *prima facie* case under Title VII, Cooper must show that her "performance was of sufficient quality to merit continued employment." *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir. 1977). An employer's performance expectations need not be reasonable; an employer may freely set unreasonable expectations and fire an employee for failing to meet these admittedly unreasonable standards. *See Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989); *Sampson v. Federal Express Corp.*, 1996 WL 568792, *3-4 (N.D. Ill. 1996). However, the employer's expectations must be legitimate, rather than a mere cover for discrimination. *See id.* When the undisputed facts demonstrate that the employee has failed to meet an employer's legitimate standards, summary judgment in favor of the employer is appropriate. *See Lim v. Trustees of Indiana Univ.*, 297 F.3d 575, 581 (7th Cir. 2002).

As noted above, the Postal Service delineates a series of incidents that indicate performance "marred with deficiencies" and non-conformance with the standards outlined in the Postal Service Carriers Handbook. The Postal Service notes incidents of tardiness, difficulty delivering mail, including excessive delivery

times, and improper scanning of three collection boxes in less than two weeks in January 1999. In particular, the Postal Service claims that "missing a collection box [is] a serious matter and grounds for removal," and notes that Hill terminated a white male probationary carrier for missing a single collection box.

As noted above, Cooper concedes that her performance, for the most part, did not conform with the required standards. Cooper also does not disagree with, in principle, the expected performance standards outlined by the Postal Service. Thus, Cooper cannot satisfy her *prima facie* requirement of showing that her performance met the legitimate expectations of the Postal Service.

However, Cooper may exempt herself from this requirement by showing that the Postal Service enforced its performance standards in a discriminatory fashion. That is, Seventh Circuit authority holds that an employee does not need to show that she met an employer's legitimate expectations if she establishes that the employer selectively disciplined her based on race (or other prohibited factors). *See, e.g., Curry v. Menard, Inc.*, 270 F.3d 473, 477-78 (7th Cir. 2001); *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). In essence, this inquiry merges the second and fourth prongs of the *McDonell Douglas* analysis, and requires Cooper to show that the Postal Service did not terminate (or otherwise favor) similarly-situated employees outside of Cooper's protected class for equally-poor performance. *See Peele*

v. *Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002). An employee is similarly situated to Cooper if she "is directly comparable to [the plaintiff] in all material aspects." *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003). This burden "normally entails establishing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct." *Snipes v. Illinois Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002).

Here, Cooper fails to satisfy this burden because she does not establish that the Postal Service retained any similarly situated, but equally deficient, probationary employees. Cooper attempts to meet this burden by identifying Jason Carr ("Carr"), a white male probationary part-time letter carrier, who purportedly "delivered mail to the wrong address" and had delivery times longer than Cooper's, but nevertheless was retained by the Postal Service. However, Cooper's sole evidentiary support for Carr's performance is her own deposition testimony, which Cooper fails to attach to her Memorandum of Law or Local Rule 56.1 Statement of Additional Facts (and only a portion of such testimony is contained in the deposition transcript submitted by the Postal Service). Because Cooper's submissions do not conform with Local Rule 56.1, this Court need not afford them any significance. *See, e.g., Flaherty v. Gas Research Institute,* 31 F.3d 451, 453 (7th Cir. 1994).

Even if the Court chose to consider Cooper's allegations here, they still fail for at least two reasons. First, Cooper admitted that she could not identify any other retained probationary letter carrier who improperly retrieved mail from a collection box not on his/her route, or a probationary carrier who missed assigned collection boxes. Second, the entirety of Cooper's evidence is her own deposition testimony containing nothing more than her own conclusory, unsupported allegations pertaining to Carr's performance. This "evidence" cannot meet Cooper's summary judgment burden. *See, e.g., Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Rather, Cooper must establish sufficient facts, with suitable evidentiary support, to be able to show that Carr was a similarly situated employee. *See Johnson v. G.A.T.X. Logistics, Inc.*, 2001 WL 1568883, *3 (N.D. Ill. 2001). Cooper has failed to do so. (The Court does not address the other two employees that Cooper claims are similarly situated because Cooper identifies these employees by first name only and fails to offer any specifics of their job performance. Therefore, these allegations fail for the same reasons as stated above.)

In sum, even when construed in a light most favorable to Cooper, the evidence here cannot establish that Cooper either met the Postal Service's legitimate expectations or that the Postal Service applied its expectations in a discriminatory fashion. Because the Court finds that Cooper cannot establish a *prima facie*

case, it need not address Defendant's other grounds for summary judgment.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: February 23, 2004